UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK CORNELISON,<br><br>                Petitioner,<br><br>v.<br><br>JAY CHRISTENSEN,[1]<br><br>                Respondent. | Case No. 1:16-cv-00301-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

      Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho state prisoner Mark Cornelison ("Petitioner" or "Cornelison"), challenging Petitioner's state court conviction for felony driving under the influence ("DUI"). (Dkt. 3.) The Court previously dismissed, as procedurally defaulted, Claims 1, 3, and 4 of the Petition. (Dkt. 14.) The only remaining claim—Claim 2—is now fully briefed and ripe for adjudication. (Dkt. 15, 19.) The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 10.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

      Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R.

---

[1] Respondent Jay Christensen is substituted for his predecessors (Keith Yordy, Al Ramirez, and Chad Page), as warden of the facility in which Petitioner is now confined. *See* Rule 2(a) of the Rules Governing § 2254 Cases; Fed. R. Civ. P. 25(d).

**MEMORANDUM DECISION AND ORDER - 1**

7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief on Petitioner's remaining claim.

## BACKGROUND

While on parole for a DUI conviction, Petitioner led law enforcement officers on a high-speed chase that ended when Petitioner drove his car into a power pole. Petitioner was taken to the hospital where, after he refused to perform a field sobriety test, his blood was drawn without his consent and without a warrant. Testing showed that Petitioner's blood alcohol content was well over the legal limit.

In the Fifth Judicial District Court in Twin Falls County, Idaho, Petitioner was charged with felony DUI and felony eluding a police officer, along with a persistent violator enhancement. Petitioner asked both of his trial attorneys to file a motion to suppress the results of the blood test. Petitioner based his request on *Missouri v. McNeely*, 569 U.S. 141, 165 (2013), in which the Supreme Court held that the natural metabolization of alcohol in the blood does not constitute a per se exception to the warrant requirement in all drunk-driving cases. Neither attorney filed the requested motion.

In exchange for dismissal of the eluding charge, Petitioner pleaded guilty to felony DUI and admitted his persistent violator status. Petitioner received a unified sentence of twenty years in prison with ten years fixed. The Idaho Court of Appeals affirmed. (State's Lodging B-4.)

Petitioner then pursued state post-conviction relief, arguing that his trial attorneys rendered ineffective assistance by failing to file a motion to suppress the results of the

**MEMORANDUM DECISION AND ORDER - 2**

warrantless blood test. (State's Lodging C-1 at 5-9.) The state district court dismissed the petition, holding that Petitioner, as part of his parole agreement, had waived his Fourth Amendment right to be free from unreasonable searches and seizures. (*Id*. at 275-77.) The Idaho Court of Appeals agreed and denied Petitioner's claim on the merits. (State's Lodging D-4.)

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted when a federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to

**MEMORANDUM DECISION AND ORDER - 3**

give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then

**MEMORANDUM DECISION AND ORDER - 4**

relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, evidence that was not presented to the state court cannot be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine,

**MEMORANDUM DECISION AND ORDER - 5**

considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). State court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to or an unreasonable application of Supreme Court precedent, or by establishing that the state court's factual findings were unreasonable—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778. De novo review is also required where the state appellate court did not decide a properly-asserted claim or where an adequate excuse for the procedural default of a claim exists. *Pirtle v.*

**MEMORANDUM DECISION AND ORDER - 6**

*Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

## DISCUSSION OF CLAIM 2

In Claim 2, Petitioner asserts that trial counsel rendered ineffective assistance by failing to move to suppress the results of the warrantless blood test.

**1.    Relevant Facts**

Condition 6 of Petitioner's parole agreement provided as follows:

> Parolee shall: (a) abstain from excessive use of alcoholic beverages; (b) abstain completely from the possession, procurement, use, or sale of narcotics or controlled substance, except as prescribed by a licensed medical practitioner; (c) *freely cooperate and voluntarily submit to medical and chemical tests and examinations for the purpose of determining if parolee is using, or under the influence of alcohol or narcotics*, which may be at parolee's expense; (d) participate in treatment programs as specified by the Commission or ordered by the parole officer.

(State's Lodging D-1 at 35 (emphasis added).)

In Condition 8 of that same agreement, Petitioner agreed to "submit to a search or person or property, to include residence and vehicle, at any time and place by any agent of Field and Community Services" and to "waive [his] constitutional right to be free from such searching." (*Id.*)

**2.    Clearly-Established Law**

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel ("IAC") claims is set forth in *Strickland v.*

**MEMORANDUM DECISION AND ORDER - 7**

*Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A petitioner must establish both deficient performance and prejudice to prove IAC. *Id.* at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one prong is not satisfied and would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a *strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance*; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (emphasis added) (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense or which motions or evidence to present, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. That is, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Further, counsel is not deficient in an area where an investigation would not have been fruitful for the defense.

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

To show prejudice based on deficient performance of counsel in a case where, as here, the petitioner pleaded guilty, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Further, to demonstrate prejudice when the ineffective assistance claim is based on counsel's failure to file a motion to suppress evidence on Fourth Amendment grounds, the petitioner "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the [outcome] would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

**MEMORANDUM DECISION AND ORDER - 10**

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court has explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S. Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when evaluating an IAC claim under § 2254(d), this Court's review of that claim must be "doubly deferential." *Pinholster*, 563 U.S. at 190 (internal quotation marks omitted).

Because Petitioner's IAC claim is based on counsel's failure to file a suppression motion, the Court must also consider the standards of law applicable to Fourth Amendment claims.

The Fourth Amendment protects against unreasonable searches and seizures and "requires, as a general matter, that police procure a warrant before searching or seizing property." *United States v. Ewing*, 638 F.3d 1226, 1231 (9th Cir. 2011). However, there are several exceptions to the warrant requirement.

**MEMORANDUM DECISION AND ORDER - 11**

One such exception is consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."). If a person consents to a search or seizure, law enforcement does not need a warrant or probable cause. With respect to the consent of parolees, the United States Supreme Court has held that a state can constitutionally require, as a condition of parole, that parolees consent to submit to any search, at any time, without any suspicion. *Samson v. California*, 547 U.S. 843, 857 (2006) ("[T]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.").

Another exception to the warrant requirement is the exigent circumstances exception, which applies "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (internal quotation marks and alteration omitted). Preventing the "imminent destruction of evidence" constitutes an exigent circumstance "when the conduct of the police preceding the exigency is reasonable"—that is, when "the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment." *Id*. at 462.

The imminent loss of evidence is frequently an issue in drunk-driving cases, given that the natural metabolization of alcohol in the blood over time will eventually result in the destruction of the evidence of intoxication. In *Missouri v. McNeely*, 569 U.S. 141 (2013), the United States Supreme Court considered the impact of this natural

**MEMORANDUM DECISION AND ORDER - 12**

metabolization on the exigent circumstances exception to the warrant requirement. In *McNeely*, the Court held that, although the potential loss of evidence resulting from that metabolization is a factor to be considered in a Fourth Amendment inquiry, it does not necessarily constitute exigent circumstances in all drunk-driving cases. 569 U.S. at 145, 165. However, there undoubtedly are some cases "when anticipated delays in obtaining a warrant will justify a blood test without judicial authorization," and whether a warrant is required for a blood draw depends on the totality of the circumstances. *Id*. at 165.

3.  **The Idaho Court of Appeals' Rejection of Claim 2 Was Not Contrary to, or an Unreasonable Application of, Clearly-Established Federal Law, nor Was It Based on an Unreasonable Determination of the Facts.**

The Idaho Court of Appeals concluded that Petitioner's counsel was not ineffective because a motion to suppress the blood test results would have been denied based on Petitioner's consent to such testing in his parole agreement:

> Pursuant to his parole agreement, Cornelison waived certain Fourth Amendment rights against unreasonable searches and seizures. Specifically, Cornelison agreed [in Condition 6] to "freely cooperate and voluntarily submit to medical and chemical tests and examinations for the purpose of determining if parolee is using, or under the influence of alcohol or narcotics." The medical and chemical tests described in Cornelison's parole agreement include blood alcohol content tests.... Cornelison agreed to chemical testing in his parole agreement and cannot assert such testing violated his Fourth Amendment rights.

(State's Lodging D-4 at 5.)

Cornelison argued to the court of appeals—as he does to this Court (*see* Dkt. 19 at 11-12)—that the explanatory phrase of Condition 8 of the parole agreement—stating that "any agent of Field and Community Services" could conduct searches of Petitioner's

**MEMORANDUM DECISION AND ORDER - 13**

"person or property, to include residence and vehicle"—applied to Condition 6, the consent to testing, as well. Therefore, argued Petitioner, the police officer who ordered the blood test in his case was not authorized to do so by the parole agreement. The court of appeals disagreed:

> Cornelison maintains that the blood test could only be conducted by "any agent of Field and Community Services," not law enforcement officers. That terminology, however, applied to a separate condition of his parole agreement where he waived his constitutional right to be free from searches of his person or property. Nonetheless, he asserts that if the parole agreement is read as a whole, the same limitation also applies to the separate testing provision. *No such limitation applies to the testing provision of his parole agreement*.

(State's Lodging D-4 at 5-6 (emphasis added).)

The court also determined that, even if the phrase "any agent of Field and Community Services" did apply to both Condition 8 and Condition 6, it did not disqualify the police officer in Petitioner's case from ordering the blood test:

> Moreover, "[n]othing precludes mutually beneficial cooperation between law enforcement officials and parole officers...." *State v. Armstrong*, 158 Idaho 364, 370, 347 P.3d 1025, 1031 (Ct. App. 2015). Thus, even applying the "agent[s] of Field and Community Services" language, the test was appropriately conducted under the agreement waiver.

(State's Lodging D-4 at 5-6 (ellipsis in original).) The court concluded that any motion to suppress would have been denied, and that, therefore, Petitioner had not shown a reasonable probability of prejudice from counsel's failure to move to suppress. *Id*. at 6.

The Idaho Court of Appeals' rejection of Claim 2 was eminently reasonable. Petitioner agreed to submit to chemical tests, such as the blood test administered after the

**MEMORANDUM DECISION AND ORDER - 14**

car crash, as a condition of his parole—a parole requirement that the Supreme Court has upheld. *See Samson*, 547 U.S. at 857. The blood test was conducted pursuant to Petitioner's consent. Therefore, law enforcement officers did not need a warrant, *see Schneckloth*, 412 U.S. at 219, and any motion to suppress would have been denied, *see Kimmelman*, 477 U.S. at 375.

Petitioner's reliance on *McNeely* is misplaced. Regardless of whether there were exigent circumstances in Petitioner's case that justified the warrantless blood test under the particular warrant exception discussed in that case, the blood test was reasonable under a different exception: the *consent* exception. The Idaho Court of Appeals' rejection of Claim 2 was not contrary to or an unreasonable application of clearly-established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. Petitioner simply has not shown prejudice from his attorneys' decisions not to move to suppress the blood test results.

## CONCLUSION

For the foregoing reasons, Petitioner is not entitled to habeas relief on the merits of Claim 2.

## ORDER

**IT IS ORDERED:**

1. Claim 2 of the Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED. Because Petitioner's other claims have already been dismissed, this entire action is DISMISSED with prejudice, and judgment will be entered in favor of Respondent.

**MEMORANDUM DECISION AND ORDER - 15**

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: January 8, 2019

_____
B. Lynn Winmill
U.S. District Court Judge